lative provisions. In another case depending on the effect of the statute of limitations the court thought fit to decline fixing any precise date of termination applicable to all cases.

This question being thus left open, we think it right in this case, to take the establishment at Richmond of the adhering government of Virginia as the recognized government of the whole state as the end of the war in this state. This event may be said to have taken place when the executive department of that government was removed from Alexandria to Richmond, on May 26, 1865. The period, then, to be excluded in the computation of interest is the time from April 19, 1861, to May 26, 1865.

2. What credit, if any, is to be given to Bigler for money received by Waller from the Confederate government?

The evidence shows that the sum of two thousand dollars, was thus received in October, 1863, by way of compensation for use made of the property and of indemnity for waste committed upon it. At that time it appears that the rate of Confederate notes for gold was thirteen for one. For this sum of two thousand dollars, reduced to the specie equivalent, with interest on the sum thus ascertained, credit is to be given on the bond.

3. What credit, if any, should be given to Bigler for damage sustained by reason of non-fulfillment on the part of Waller of his contract to release to purchasers? It is clear enough upon the evidence that under the original contract of purchase, Bigler had a right to sell portions of the estate, and to have these portions released to the purchaser on payment to Waller of so much of the purchase money as would leave his security unimpaired. And it is sufficiently proved that some time after the purchase, in 1853 or 1854, Bigler had some offers to buy small parcels of the tract, and applied orally to Waller for a release; and that Waller, for some reason, refused. But it does not appear that Bigler at that time, or at any time afterwards, until this controversy arose, set up any claim for damages. On the contrary, Bigler continued to make payments on account of the purchase until May, 1860. Under these circumstances it would be difficult to sustain the claim for damages were the proof of the quantity of land sold, the price offered, and the demand for release under the contract much clearer and more specific than it is. But on all these points the evidence is vague and indefinite—much too vague and indefinite to form the basis of a decree. We are obliged, therefore, to deny any credit on account of damages. A decree may be entered in comformity with these principles.

[NOTE. Complainant appealed from the decree of the circuit court, directing the payment of $17,377.48, in United States coin, to the administrator of Waller; and in delivering the opinion of the supreme court in Bigler v. Waller, 14 Wall. (81 U. S.) 297, Mr. Justice Strong held that there was no sufficient reason for the allowance of a credit on complainant's bond in consequence of Waller's refusal to execute releases, passed on several questions not raised in the principal cause, and reversed the decree of the lower court, on the ground that it directed the amount of the decree to be paid in United States coin. For a hearing on motion to dismiss the appeal, in the supreme court, see 12 Wall. (79 U. S.) 142.]

---

## Case No. 1,405.

### Ex parte BILL.

[3 Cranch, C. C. 117.] [1]

Circuit Court, District of Columbia. May, 1827.

#### ARREST—PRIVILEGE—WITNESSES.

A recommitment of a debtor upon a ca. sa. after he has been out for more than a year upon a prison-bounds bond, is not a breach of his privilege as a witness and party, bound to attend the court.

Habeas corpus [for the discharge of A. T. F. Bill from custody.] Upon the return it appeared that Mr. Bill had been committed in execution upon a ca. sa., and had taken the benefit of the prison bounds, upon giving the bond and security required by law, more than a year ago. At the expiration of the year the plaintiff required the marshal to recommit him to close custody, agreeably to the act of congress of June 24, 1812, § 3, (2 Stat. 755,) "to amend the laws within the District of Columbia," by which it is enacted, "that the benefit of the prison rules shall not be allowed to any debtor hereafter taken or charged in execution within the said district for more than one year from the date of the bond given by him or her for keeping within the said rules, after the expiration of which time, if the person so taken or charged in execution shall not be discharged by due course of law, it shall be the duty of the marshal or other officer, to whose custody such person was committed, to recommit him, or her, to close jail and confinement, there to remain until the debt for which, he or she was taken or charged in execution shall be paid, or until he or she shall be discharged under the act of congress for the relief of insolvent debtors within the District of Columbia."

The marshal, accordingly, so recommitted him during the session of this court, and while Mr. Bill was bound to attend this court as a witness, and had a cause depending in court for trial at this term. Mr. Bill moved to be discharged, and claimed the right of a witness, and of a party to be free from arrest during the session of the court.

THE COURT (nem. con.) refused to discharge him, being of opinion that it was not a new arrest; but was analogous to the case of the bail taking his principal, which is said

[1] [Reported by Hon. William Cranch, Chief Judge.]

to be an exception to the general rule. See 3 Starkie, Ev. pt. 4, pp. 1726, 1727. The prisoner was remanded.

## Case No. 1,406.

### BILL v. BECKWITH et al.

### In re NEAL.

[2 N. B. R. (1868.) 241, (Quarto, 82;) 1 Chi. Leg. News, 103.] [1]

Circuit Court, N. D. Ohio.

BANKRUPTCY—FRAUDULENT TRANSFERS—SUMMARY PROCEEDING TO RECOVER PROPERTY—ISSUES OF FACT—TRIAL BY JURY.

1. Property fraudulently disposed of by a bankrupt in proceedings by or against him may be recovered by the assignee upon petition in the bankruptcy court, proceedings upon which may be of a summary character.

2. The district judge may order issues of fact arising in such cases to be tried by a jury.

3. Suits may be brought at common law, or by bill in equity, for the recovery of property in such cases, but as they must be governed by the technical rules, and be subject to the delays incident thereto, it is preferable to proceed by summary proceedings in the court of bankruptcy, that being a cheaper, speedier, and more simple mode.

[Cited in Foster v. Ames, Case No. 4,965; Norris' Case, Id. 10,304; Markson v. Heaney, Id. 9,098; Goodenow v. Milliken, Id. 5,535; Re Dole, 3,965; Hudson v. Schwab, Id. 6,835. Contra: Barstow v. Peckham, Id. 1,064; In re Marter, Id. 9,143.]

[Appeal from the district court of the United States for the northern district of Ohio.

[In bankruptcy. Petition by H. N. Bill, as assignee of John C. Neal, against Seth R. Beckwith, Charles P. Vaupel, and James P. Moore for the recovery of property fraudulently transferred by the assignor. The petition was dismissed, and the assignee now petitions for review. The order was reversed.]

Willey & Carey, for assignee.

Hon. James Mason and Wyman & Barlow, for respondents.

SWAYNE, Circuit Justice. On the 22d of January, 1868, as is alleged, John C. Neal, being insolvent, and in contemplation of bankruptcy, did, with the intent to defraud his creditors, transfer a certain stock of goods, consisting of drugs, chemicals, &c., belonging to him, to Seth R. Beckwith. He, the said Beckwith, knowing the design of said Neal, and being also aware of his insolvency, connived with the said Neal, and obtained possession of said property. Shortly afterwards, Beckwith sold, or pretended to sell, said property to Chas. P. Vaupel and James P. Moore, who, at the time had full knowledge of the facts before stated, and took possession of said property under those circumstances.

The assignee of Neal filed his petition against the said Beckwith, Vaupel, and

Moore, setting forth the facts of the fraudulent transfer and pretended sale, praying for an order that they show cause why they should not be required to deliver over said property to him, and pay him the proceeds of any part of the property they had sold. Thereupon Beckwith, Vaupel, and Moore moved the district court to dismiss the petition on the ground of its being irregular "and without authority of law." Upon argument the court below sustained the motion, and dismissed the petition with costs.

A petition for review was then filed by the assignee, praying this court to review and reverse the decision of the district court. The position of the defendants is, that while the district court has full jurisdiction to proceed with an action at law or in equity, such jurisdiction can be exercised only in one of these ways. The question is a statutory one, and must be decided according to the provisions of the statute which bears upon the subject. The first section of the bankrupt law [14 Stat. 517] provides as follows: "That the several district courts of the United States be and they hereby are constituted courts of bankruptcy, and they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and they are hereby authorized to hear and adjudicate upon the same according to the provisions of this act. The said court shall be always open for the transaction of business under this act, and the powers and jurisdiction hereby granted and conferred shall be exercised as well in vacation as in term time; and a judge sitting in chambers shall have the same powers and jurisdiction, including the power of keeping order and punishing any contempt of his authority, as when sitting in court. And the jurisdiction hereby conferred shall extend to all cases, and controversies, arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens, and other specific claims, thereon; to the adjustment of the priorities and conflicting interests of all parties; and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of assets among all the creditors; and to all acts, matters, and things to be done under and in virtue of, the bankruptcy, until the final disposition and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy. The said courts shall have full authority to compel obedience to all orders and decrees passed by them in bankruptcy, by process of contempt and other remedial process, to the same extent that the circuit courts now have in any suit pending therein in equity." "Said courts may sit for the transaction of business in bankruptcy at any place in the district, of which place, and the time of holding court, they shall have given notice, as

[1] [Reprinted from 2 N. B. R. 241, (Quarto, 82,) by permission. 1 Chi. Leg. News, 103, only contains the syllabus.]